# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,           15-CR-20152 (2)

    v.                    HON. TERRENCE G. BERG

LAWRENCE CHRISTOPHER
DAVIS,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C. § 2255 (DKT. 213)

    This matter is before the Court on Defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Dkt. 213. In his motion, Defendant asserts that his trial counsel was ineffective for failing to object to the plea agreement's use of U.S.S.G. § 2A2.1(a)(1), which used a base offense level of 33 for "assault with intent to commit murder/attempted murder" and the specific offense characteristic increase of two levels because the victim sustained serious bodily injury, under § 2A2.1(b)(1)(B). Defendant maintains that the record did not support the application of this guideline, and that the guideline range should have been 63–78 months rather than the 121–151 month range that the Court found

applicable. Defendant was ultimately sentenced to 113 months.[1] Dkt. 188 at Pg ID 961. The Court ordered the Government to file a response to Defendant's motions, Dkt. 216, which the Government did on April 2, 2018. Dkt. 217. On April 30, 2018, Defendant filed a reply brief. Dkt. 219. For the reasons set forth below, Defendant's motion is **DENIED**.

## BACKGROUND

Lawrence Christopher Davis ("Petitioner") pleaded guilty on August 22, 2016 pursuant to a written plea agreement under Rule 11 of the Fed. R. Crim. Proc. Dkt. 166. In the agreement, Petitioner pleaded guilty to tampering with a witness, identified as "Jones" or "J.J.," by physical force in violation of 18 U.S.C. §§ 1512 (a)(2)(A) and 2. *Id.* at Pg ID 734. The facts of the case are set forth in the plea agreement as follows:

> On July 26, 2014, co-defendant Lezlye Taylor and J.J. met up and drove around the city of Flint. Unbeknownst to J.J., Lezlye Taylor was communicating with co-defendant Christopher Blackwell using a cellular phone during the time that J.J. and Taylor were together. Taylor was providing Blackwell her and J.J.'s locations throughout the evening. Taylor provided these locations to Blackwell knowing that Blackwell intended to physically harm J.J. Specifically, in the early morning of July 27, 2014, in the Eastern District of Michigan, Taylor

---

[1] The Court sentenced Defendant to 132 months total, with credit for 19 months served in state custody.

communicated to Blackwell that J.J. and her were about to leave an apartment building, knowing that J.J. would be harmed by physical force, and, likely be shot, upon exiting the building. In fact, when J.J. exited the building, he was shot two times. During the evening of July 26 and the early morning hours of July 27, defendant was frequently in telephone contact with Blackwell, and acted in concert with Blackwell and others to inflict physical harm against J.J.

16 days after the shooting, defendant discarded one of the firearms used to shoot Jones.

Defendant acted in concert with others to physically harm J.J. in order to prevent his testimony in a federal criminal case, *United States v. Hogg*, 13-cr-20809.

Dkt. 166 at Pg ID 735.

The plea agreement states that the parties disagreed on the guideline range, but only because Defendant argued that he deserved a two-point reduction based on having a minor role in the offense. *Id.* at Pg ID 736. Defendant took the position that if the two-point reduction for minor role were applied to the guideline range for attempted murder, the resulting guideline range would be 97–121 months. *Id.* The government took the position that Defendant did not deserve a reduction for minor role, and that the guideline range was therefore 121–151 months based on the sentence scoring worksheets attached to the plea agreement. *Id.* Both parties accepted the attempted murder guideline of § 2A2.1(a)(1) as the starting point for calculating the base offense level; the lower

3

guideline range that Defendant sought was also premised on the use of the attempted murder cross reference. Neither party objected to the use of that cross-reference at the plea or sentence.

Section 2A2.1(a)(1) of the U.S.S.G. establishes the base offense level for cases of assault with intent to commit murder "if the object of the offense would have constituted first degree murder." During the guilty plea colloquy, Defendant acknowledged that he understood the Plea Agreement, and further understood that he was charged with the offense of aiding and abetting co-defendants Christopher Blackwell and Lezlye Taylor in using physical force against a federal witness, "J.J.," by shooting him with a firearm in order to prevent his testimony in a federal criminal case. Defendant stated in his factual basis that he was aware that Blackwell intended to hurt the witness and that he was going to let Blackwell use Defendant's apartment if he needed to get away. Defendant further stated that he heard the shots being fired and that he had been in touch with Blackwell throughout that evening regarding meeting up with Blackwell to help him carry out the plan to harm the witness.

At sentencing on December 21, 2016, Petitioner's counsel reiterated that the issue was whether the two-point reduction for minor role applied; he did not raise any objection to the use of the cross-reference for attempted murder. He stated:

> I went over the presentence report with my client. We've thoroughly reviewed it. We have taken issue with the scoring of the sentence guidelines. This was no surprise to the Court or the prosecutor since our Rule 11 agreement contemplated that we would agree to disagree about the application of a two-level reduction for being a minor participant. There are no other corrections that need to be made.

Dkt. 188 at Pg ID 940. Ultimately, this Court determined that Petitioner did not qualify for the minor-role reduction. Dkt. 188 at Pg ID 944. The Court's finding was based on the evidence that Petitioner played a significant role in the offense. *Id.* at Pg ID 943–44.

Petitioner does not seek to challenge the Court's finding on the issue of a minor-role reduction. Instead, Petitioner now seeks to vacate his sentence pursuant to § 2255 on the ground of ineffective assistance of counsel. Specifically, Petitioner argues that his attorney erred by allowing Petitioner to plead guilty to the offense scored with a cross-reference to first-degree murder. Dkt. 213 at Pg ID 1448. Instead, Petitioner argues, the base offense level should have been scored at 27, under USSG § 2A2.1(a)(2), which applies where the object of the offense would not have constituted first-degree murder. Dkt. 213 at Pg ID 1448. If the base offense level had been 27, rather than 33, the adjusted base offense level would have been 26, which yields a guideline range of 63–78 months. USSG § 5A,

5

Sentencing Table. As a prerequisite to Petitioner's ineffective assistance of counsel claim, he contends that he did not agree to the cross-reference to first-degree murder. Dkt. 213 at Pg ID 1448.

## ANALYSIS

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255. To prevail on a § 2255 motion "'a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)).

Non-constitutional errors are generally outside the scope of § 2255 relief. *See United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A petitioner can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting

*United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotations omitted)).

As a general rule, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the petitioner shows either (1) "cause" and "actual prejudice" or (2) "actual innocence." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *United States v. Frady*, 456 U.S. 152, 167–68 (1982). An ineffective assistance of counsel claim, however, is not subject to the procedural default rule. *Massaro*, 538 U.S. at 504. An ineffective assistance of counsel claim may be raised in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal. *Id*. Petitioner was free to challenge the factual findings of the Court and the imposition of his sentence through a direct appeal of that sentence, notwithstanding the waiver of appeal in his plea agreement. Dkt. 188 at Pg ID 964. Instead of doing so, Petitioner immediately filed a motion pursuant to § 2255. Consequently, the requirements of exhaustion prevent him from challenging the Court's finding through a § 2255 motion. Instead, he is limited to an ineffective assistance of counsel claim.

There is a two-prong test to evaluate claims of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). A defendant must prove that (1) counsel's performance fell

7

below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id*. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within a wide range of professional assistance." *Id*. at 689.

Petitioner claims that he did not agree to the scoring cross-reference to first-degree murder. Consequently, he argues, his counsel was ineffective by failing to object to this Court imposing a sentence based on a cross-reference to first-degree murder.

As an initial matter, the record shows that Petitioner did in fact agree to the calculation of his sentencing guidelines using the cross-reference for attempted murder. The Plea Agreement states this clearly and during the plea hearing Petitioner acknowledged that he understood the plea agreement and agreed with it. At sentencing, Petitioner's counsel again indicated that he went over the plea agreement with Petitioner prior to the sentencing hearing. Dkt. 188 at Pg ID 940. The Court asked Petitioner directly about the scoring:

> THE COURT: Specifically in the plea agreement that you entered, you calculated the guidelines at between 97 and 121 months, if you received a two-point reduction in

> the guideline range for being a minor participant, or between 121 and 151 months if you did not receive those two points. Do you understand?
> THE DEFENDANT: Yes, sir.
> THE COURT: Other than that, did you have anything about the presentence report, Mr. Davis, that you saw that you believe need to be changed or corrected?
> THE DEFENDANT: No, sir.

*Id*.

The Government specifically noted the cross-reference to first degree murder during the sentencing. *Id*. at Pg ID 952 ("Mr. Davis is in some sense lucky that this isn't a homicide case that he's sitting here on, the cross reference here was to attempt [sic] homicide, and understandably so."). Petitioner has not alleged any facts that refute the clear indication in the record that he read and understood the plea agreement, including the cross-reference to first-degree murder and the factual predicate thereto—namely, that "Defendant acted in concert with others to physically harm J.J. in order to prevent his testimony in a federal criminal case, *United States v. Hogg*, 13-cr-20809" and that the specific physical harm intended was a shooting Dkt. 166 at Pg ID 735.

Even if Defendant now says he did not intend to agree to the cross-reference, as he clearly did, both by signing the Plea Agreement and by not objecting to the presentence report, he would not have a successful claim for ineffective assistance of counsel. The first prong of the *Strickland* test—that counsel's performance fell

9

below an objective standard of reasonableness—is not satisfied here. The record demonstrates that Petitioner's counsel negotiated a substantial reduction in his sentence in exchange for a plea of guilty, set forth in the plea agreement. Dkt. 166 at Pg ID 737 ("The government will also not recommend a sentence of imprisonment greater than 132 months. The government also will recommend that the Court reduce defendant's sentence for any time that defendant spent in state custody since May 21, 2015); Dkt. 166 at Pg ID 750 (three-point adjustment for acceptance of responsibility); Dkt. 166 at Pg ID 734 (the defendant agreed to plead guilty only to Count Two after the government charged him with three counts). Given the advantages flowing from the negotiated plea agreement, declining to object to a portion of the plea agreement—after Petitioner had indicated to counsel and to the Court that the agreement was satisfactory—was reasonable.

Defendant also cannot meet the second prong of the *Strickland* test. Petitioner cannot show that counsel's deficient performance prejudiced the defendant by causing an unreliable or fundamentally unfair outcome because, even if defense counsel had objected to the cross-reference, the objection would have been without merit. First degree murder is defined as "[e]very murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing. . ." 18 U.S.C. § 1111. There

below an objective standard of reasonableness—is not satisfied here. The record demonstrates that Petitioner's counsel negotiated a substantial reduction in his sentence in exchange for a plea of guilty, set forth in the plea agreement. Dkt. 166 at Pg ID 737 ("The government will also not recommend a sentence of imprisonment greater than 132 months. The government also will recommend that the Court reduce defendant's sentence for any time that defendant spent in state custody since May 21, 2015); Dkt. 166 at Pg ID 750 (three-point adjustment for acceptance of responsibility); Dkt. 166 at Pg ID 734 (the defendant agreed to plead guilty only to Count Two after the government charged him with three counts). Given the advantages flowing from the negotiated plea agreement, declining to object to a portion of the plea agreement—after Petitioner had indicated to counsel and to the Court that the agreement was satisfactory—was reasonable.

Defendant also cannot meet the second prong of the *Strickland* test. Petitioner cannot show that counsel's deficient performance prejudiced the defendant by causing an unreliable or fundamentally unfair outcome because, even if defense counsel had objected to the cross-reference, the objection would have been without merit. First degree murder is defined as "[e]very murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing. . ." 18 U.S.C. § 1111. There

was a factual basis in the plea hearing, written plea agreement, and sentencing hearing that the *object* of the offense *was* in fact first-degree murder, rendering the scoring with the cross-reference correct. At Defendant's plea hearing, Defendant's attorney established the factual basis for his guilty plea by eliciting from Defendant that he had agreed to help Blackwell carry out the shooting, knowing that Blackwell intended to hurt J.J. and prevent his testimony in a federal criminal case. During the sentencing hearing, the Court discussed what it had found Petitioner's role in the shooting to be: "the case involves a shooting of an individual, Juawone Jones, that occurred on July 27th of 2014, and you were charged with being involved in this. You've admitted to one of the counts that pertain to essentially trying to influence a witness and being involved in this activity." Dkt. 188 at Pg ID 943. Defendant's conduct was both premeditated—there was a plan to harm J.J.—and deliberate.

But in any event, Defendant had already indicated that he agreed with the way in which the offense was scored. Dkt. 166 at Pg ID 735. It would not have made sense for Defendant's attorney to object to an agreement to which Defendant had already agreed. Therefore, Petitioner cannot show that his counsel's performance "prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome." *Strickland*, 466 U.S. at 687–88. The Court found, based on the facts in the record and pursuant to Petitioner's

11

admission in his plea agreement, that the cross-reference to first-degree murder was warranted. An objection from counsel would have been the equivalent of seeking to withdraw from the plea agreement, because the agreement was premised on a guideline range that used the cross reference for attempted first-degree murder. Such an objection would not have been reasonable because it would have been inconsistent with the written plea agreement and would not have been sustained by the Court because it was not justified by the underlying facts of the case. Based on this analysis, Petitioner has not stated a valid claim for ineffective assistance of counsel.

## CONCLUSION

For the reasons set forth above, Defendant's motion under § 2255 is **DENIED**.

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: September 28, 2018

**<u>Certificate of Service</u>**

 I hereby certify that this Order was electronically submitted on September 28, 2018, using the CM/ECF system, which will send notification to each party.

           <u>s/A. Chubb</u>
           Case Manager