UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA

v.

LAWRENCE CHRISTOPHER DAVIS

Case No. 15-cr-20152

ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A)

(COMPASSIONATE RELEASE)

Upon motion of ☐ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☐ GRANTED

☐ The defendant's previously imposed sentence of imprisonment of _____ is reduced to _____. If this sentence is less than the amount of time the defendant already served, the sentence is reduced to a time served; or

☐ Time served.

If the defendant's sentence is reduced to time served:

☐ This order is stayed for up to fourteen days, for the verification of the defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release. The defendant shall be released as soon as a residence is verified,

  a release plan is established, appropriate travel arrangements are made, and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, the parties shall immediately notify the court and show cause why the stay should be extended; or

☐ There being a verified residence and an appropriate release plan in place, this order is stayed for up to fourteen days to make appropriate travel arrangements and to ensure the defendant's safe release. The defendant shall be released as soon as appropriate travel arrangements are made and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, then the parties shall immediately notify the court and show cause why the stay should be extended.

☐ The defendant must provide the complete address where the defendant will reside upon release to the probation office in the district where they will be released because it was not included in the motion for sentence reduction.

☐ Under 18 U.S.C. § 3582(c)(1)(A), the defendant is ordered to serve a "special term" of ☐ probation or ☐ supervised release of _____ months (not to exceed the unserved portion of the original term of imprisonment).

 ☐ The defendant's previously imposed conditions of supervised release apply to the "special term" of supervision; or

☐ The conditions of the "special term" of supervision are as follows:

☐ The defendant's previously imposed conditions of supervised release are unchanged.

☐ The defendant's previously imposed conditions of supervised release are modified as follows:

☐ DEFERRED pending supplemental briefing and/or a hearing. The court DIRECTS the United States Attorney to file a response on or before _____, along with all Bureau of Prisons records (medical, institutional, administrative) relevant to this motion.

☒ DENIED after complete review of the motion on the merits.

☒ FACTORS CONSIDERED (Optional)
See addendum.

☐ DENIED WITHOUT PREJUDICE because the defendant has not exhausted all administrative remedies as required in 18 U.S.C. § 3582(c)(1)(A), nor have 30 days lapsed since receipt of the defendant's request by the warden of the defendant's facility.

 IT IS SO ORDERED.

:

              s/Terrence G. Berg
              UNITED STATES DISTRICT JUDGE

Dated: June 2, 2021

In determining whether Mr. Davis is eligible for compassionate release under 18 U.S.C. § 3582(c), the Court must determine (1) whether he has exhausted his administrative remedies, (2) whether there are "extraordinary and compelling reasons" to warrant his release, and (3) whether his release would be consistent with the factors set forth in § 3553(a). The government concedes that Mr. Davis has exhausted his administrative remedies. ECF No. 233, PageID.1564.

The government also concedes, and the Court agrees, that he has at least one "extraordinary and compelling" reason warranting release: his obesity makes it more likely he could get severely ill from COVID-19 if he were to contract the disease. *Id.* at PageID.1575; *see also* ECF No. 228, PageID.1525-26 (at the time of sentencing, Mr. Davis was already obese, but he has gained weight in prison and now has an estimated BMI of 44, though he has not been weighed by BOP in the last two years). Although Mr. Davis is only 26 years old, obesity is a particular risk factor for young people with COVID-19. *See generally* Centers for Disease Control, People with Certain Medical Conditions (May 4, 2021), https://perma.cc/F7HZ-PJJP. Mr. Davis' health problems are exacerbated by daily symptoms related to asthma.[1] ECF No. 228, PageID.1530-31; *see also* Health Records, ECF Nos. 228-2, 228-5.

However, most of the factors under § 3553(a) counsel against granting this motion. Regarding the nature and circumstances of the offense, Mr. Davis was involved in a violent crime with the goal of intimidating a witness to prevent him from testifying, a significant and dangerous offense that goes "against all the standards of our society that involve respect for human life." Sentencing Tr. 2/1/17, ECF No. 188, PageID.957. Mr. Davis indicates the Court should take his age at the

---

[1] The government asserts that this condition is not severe and is only potentially "moderate." ECF No. 233, PageID.1575. Generally, the CDC only finds moderate to severe asthma to make it more likely that an individual would get severely ill from COVID-19. Because an "extraordinary and compelling" reason for release has already been conceded, the Court will not determine whether Mr. Davis' asthma would also qualify on its own; at a minimum, it adds to the "extraordinary and compelling" nature of his health issues overall.

1

time of the incident and his relative role into account in deciding this motion, but the Court already considered these factors in determining his original sentence term. The goals of imposing a just sentence and encouraging respect for the law, given the seriousness of the conduct, would not be served by granting release. This is the factor that weighs most heavily in the decision to deny the motion.

As to the goal of deterrence, Mr. Davis has two co-defendants, one of whom had a lesser role and was released in September 2020 and the other whose projected release date is in July 2030. Releasing Mr. Davis four years before the end of his eleven-year sentence would not be consistent with the goal of deterrence because it would significantly reduce a sentence imposed to reflect punishment for a serious violent crime. Such a reduction would also cause an unwarranted disparity between his term and that of the co-defendant who would remain in prison until 2030. These factors weigh against granting release.

As to the goal of protecting the public from further crimes, Mr. Davis is currently at a low-security institution. ECF No. 228, PageID.1535. He has not had any history in prison that involves violent incidents, though he does have two disciplinary incidents on his record. ECF No. 236, PageID.1647. He also indicates a confirmed release plan to live with his aunt, and has his mother, partner, and multiple siblings living in the area who have supported him throughout his incarceration and have indicated they will continue to do so if he is released. ECF No. 228, PageID.1536-37; *see also* Letter from Yolandria Gentry, ECF No. 230-1. He has participated in Release Preparation Program classes and completed the Drug Education Program. ECF No. 228, PageID.1535. The pre-sentence report notes that Mr. Davis had no known criminal history before this case and that he "appears to have far more potential than he has demonstrated thus far" and "appears sincerely motivated to be a better son and father." PSR ¶ 72. These developments lessen the weight to be given to the factor of protecting society from additional crimes of the defendant, because Mr. Davis had shown positive rehabilitative efforts while incarcerated.

The § 3553(a) factors ultimately counsel against granting release, and the Court will deny the motion. But the Court wishes to express

heightened concern regarding the severity of COVID-19 incidence at FCI Milan, where Mr. Davis is incarcerated. Examining the publicly available data, FCI Milan experienced large COVID-19 outbreaks in both April 2020 and November – January 2021. Since the beginning of March, inmate active case numbers have been close to zero, though it is unclear whether inmates are tested regularly. There are currently four active staff cases. *See* Pandemic Response Oversight, Dashboards of BOP COVID-19 Cases (June 1, 2021), https://oig.justice.gov/coronavirus.

Though Mr. Davis' risk of contracting COVID-19 at FCI Milan seems less significant now, and that factor informs this Court's decision, "it is the obligation of the Bureau of Prisons to ensure that those inmates who do not qualify for compassionate release are housed in conditions that genuinely reduce the risk of exposure to the virus." *United States v. Brown*, No. 2:18-CR-20293-TGB, 2021 WL 388465, at *3 (E.D. Mich. Feb. 4, 2021). The situation at FCI Milan is serious enough that the Department of Justice Office of the Inspector General investigated the facility in January of this year. Its report finds as ongoing concerns that the facility design makes social distancing difficult, that FCI Milan still does not test staff for COVID-19, and that there is a need for increased cleaning and hand sanitizer supplies. *See* Pandemic Response Report 21-032 at 8, 14, 15, https://perma.cc/3T3K-7NJQ. The report also highlights several administrative and management failures that exacerbated FCI Milan's COVID-19 outbreaks. The government's Response in this matter does not meaningfully address any of Mr. Davis' allegations regarding the conditions at FCI Milan or the OIG report.

The Bureau of Prisons has a responsibility to do more for all individuals within its facilities to keep them safe, including making vaccines immediately available to all inmates. According to its website, 155 staff members and 535 of 1,279 inmates have received the vaccine at FCI Milan. *See* COVID-19 Vaccine Implementation (June 1, 2021), https://perma.cc/6MMC-WE3W. Though it is improving, this number of vaccinations is still a disturbingly low figure given the vulnerabilities already identified at FCI Milan. Delivery of vaccines to those in this facility, including Mr. Davis, must be a top priority.

3